Vandalyn HOOKS, Appellant,

v.

G. Ted SMITH, Chairman; Patricia O'Conner; Thomas S. Maddox, Jr.; Charles "Andy" Anderson; and James "Buddy" Gaddis; The Board of Education of the Owensboro Independent School District, Appellees.

No. 87–CA–1283–MR.

Court of Appeals of Kentucky.

Dec. 1, 1989.

William E. Rummage, Rummage, Kamuf, Yewell, Pace & Condon, Owensboro, for appellant.

William L. Wilson, Jr., Wilson, Wilson & Plain, Owensboro, for appellees.

Before CLAYTON, McDONALD and WILHOIT, JJ.

WILHOIT, Judge.

This appeal is from a judgment of the Daviess Circuit Court affirming the appellant's demotion by the appellee Board of Education of Owensboro from the position of elementary school principal.

The questions raised by the appellant on this appeal were thoroughly considered by the trial court in an exhaustive and well-written judgment. With respect to the first of these questions, we find ourselves in complete agreement with the trial court. That question is whether the equal protection clause of the fourteenth amendment to the United States Constitution and sections 3 and 59 of the Kentucky Constitution require that the basis for demotion of administrative personnel, now governed by KRS 161.765, be identical in substantive and procedural safeguards to those provided for in KRS 161.790 for the termination of tenured teachers' contracts of employment.

▪ Inasmuch as it cannot be said that school administrators are a "suspect class" or that the right to public employment as a school administrator is a "fundamental right," as these terms are employed by the United States Supreme Court in determining whether a violation of the Equal Protection Clause has occurred, *see Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), we cannot accept the appellant's argument that a compelling state interest must be shown to justify the different treatment of school administrators from school teachers.

▪ The proper test to be applied under the equal protection clause and the cited sections of the Kentucky Constitution is whether there is a rational basis for the different treatment. *Id.; Johnson v. Dixon*, Ky., 501 S.W.2d 256 (1973); *Kentucky Milk Marketing and Anti-Monopoly Commission v. Borden Co.*, Ky., 456 S.W.2d 831 (1970). We believe there is a rational basis. As pointed out by the trial court, "the ordinary duties of a school principal differs greatly from that of a school teacher." Administrative personnel have either fiscal management duties and educational supervisory duties, or both, with responsibilities which are quite different from those of classroom teachers. The role of an administrator in carrying out policy and in formulating overall policy is also quite different from that of a teacher. *See* KRS 161.720(8). It is certainly not beyond reason that the legislature would deem it advisable not to give one whose supervisory and policy role is so different the same kind of job protection given to a classroom teacher.

▪ The appellant argues that she had a property interest in her job and that she has been denied due process of law under the fourteenth amendment because of the statute's failure to forewarn her of the kind of conduct which would result in demotion. The problem with this argument is that under the statutory scheme, unlike a teacher, *see* KRS 161.740, a school administrator, even one who has completed three years administrative service, is not ever granted a "continuing service contract" as an administrator. This court has spoken of an "administrator with tenure," *Harlan County Board of Education v. Stagnolia*, Ky.App., 555 S.W.2d 828, 830 (1977). Strictly speaking, however, an administrator has been given no right of tenure to an administrative position and may be removed from such position by the local board of education upon recommendation of the superintendent for any reason not offending some right protected by the state or federal constitutions or KRS 161.162. *See* KRS 161.765; *Miller v. Board of Education of Hardin County*, Ky.App., 610 S.W.2d 935 (1980). At best, the statute gives an administrator with at least three years experience an additional procedural opportunity to convince the board of the lack of merit in the superintendent's recommendation of demotion, or that it violates a constitutional or statutory right. In short, our statutory scheme does not appear to have created a "property interest" in a

school administrator in continued employment as an administrator, although it does secure the right to certain procedural safeguards. The due process clause of the fourteenth amendment simply does not come into play. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

■ Finally, the appellant maintains that she was demoted in violation of her rights under the first amendment to the United States Constitution, section 5 of the Kentucky Constitution, and KRS 161.162 because her demotion was motivated at least in part by her exercise of her religious beliefs.

The circuit court found that the appellant was not demoted "because she held certain religious beliefs," for if that were true, "there would be no question ... that [her] constitutional rights had been violated." It believed, however, that the appellant's use of her religious beliefs in exercising her administrative duties and in exercising authority over teachers was offensive to some of the teachers and that "she is not entitled to impose those beliefs upon others under her administrative control." The court concluded that "[t]o use her religious beliefs in justifying her administrative decisions is ... inappropriate in a school setting ... and certainly could be very disruptive in her relationship with the teachers under her." There was evidence that the appellant had " 'quoted scriptures and referred to God in most written memos' and that "[h]er religious beliefs were expressed frequently on faculty memos.' "

It has long been recognized that the freedom of religion clause of the first amendment protects both the freedom to believe and the freedom to act. The first is an absolute freedom, while the second, which is what we are dealing with here, is not. Conduct is subject to regulation for the protection of society; however, the power to regulate must be exercised as not to unduly infringe the protected freedom. *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352 (1940). The conduct which has been held subject to governmental regulation despite the first amendment's protection of the free exercise of religion has been that which "invariably posed some substantial threat to public safety, peace or order." *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). The appellant does not appear to have been charged with any such conduct as this. In fact, the appellees admit that the "absolute most that is revealed is that some of Appellant's staff were personally offended by certain of her religious utterings," and that "[h]er right to make these religious expressions is not questioned."

The findings of the trial court indicate that the appellant's exercise of her religious beliefs was a motivating factor in her demotion. It may well be that in the absence of these activities, the appellant still would have been demoted. The trial court did not speak to this. We believe that the proper resolution of this case requires remand to the trial court to determine whether it has been shown by a preponderance of the evidence that the appellant would have been demoted even in the absence of what the appellees admit was protected conduct, *see Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and the entry of an appropriate judgment based upon that determination.

The judgment of the trial court is vacated and the case is remanded to that court for further proceedings consistent with this opinion.

All concur.