COMMONWEALTH of Kentucky TRANSPORTATION CABINET, Appellant,

v.

Gary Lee HOBSON, Appellee.

No. 92–CA–2346–MR.

Court of Appeals of Kentucky.

Dec. 3, 1993.

Rehearing Denied Feb. 18, 1994.

Stewart Burch, Charles E. Jones, Logan & Gaines, Frankfort, for appellant.

Stephen W. Owens, Pikeville, Lowell E. Spencer, Paintsville, for appellee.

Before LESTER, C.J. and HOWERTON and HUDDLESTON, JJ.

## OPINION

HOWERTON, Judge.

The Transportation Cabinet appeals from an order of the Johnson Circuit Court directing it to issue a Kentucky operator's license to Gary Lee Hobson. Hobson had his Florida license revoked for five years as a result of two DUI convictions and applied for a Kentucky license before the revocation period elapsed. Relying on KRS 186.440(4) and 601 KAR 12:020 Section 2, the Cabinet denied the request. For reasons stated below, we agree with the position taken by the Cabinet and reverse the Johnson Circuit Court.

Hobson was a resident of Kentucky when he committed his first offense. When he committed the second DUI offense, Hobson was in possession of a driver's license in Florida, where he had moved. Upon receipt of the conviction information, Florida suspended his license for five years pursuant to applicable Florida law.

KRS 186.430, entitled "Exemption of Nonresidents," gives a nonresident over the age of 16 the right to drive over Kentucky roads provided he has a valid operator's license issued by his state of residence. This exemption is first noted in KRS 186.410 and sets out the general rule that every person operating a motor vehicle on the state's highways must secure a Kentucky driver's license. KRS 186.430 exempts nonresidents from this rule.

Hobson was denied a driver's license by the Cabinet when he reapplied upon returning to Kentucky. The Cabinet based its denial on the fact that Hobson could not furnish proof of restoration of his Florida driving privileges as required by 601 KAR 12:020 Section 2, and on KRS 186.440(4).

KRS 186.440, in pertinent part, provides as follows:

An operator's license shall not be granted to:

. . . .

(4) Any person whose operator's license has been revoked, nor to any nonresident whose privilege of exemption under KRS 186.430 has been refused or discontinued, until the expiration of the period for which the license was revoked, or for which the privilege was refused or discontinued[.]

We read KRS 186.440 to clearly compel denial of a Kentucky license to a nonresident during such time as his license remains revoked in the issuing state. We believe the word "nonresident" refers to the status of the driver at the time of revocation and that an individual who moves to Kentucky cannot successfully avoid the provisions of the statute by the simple expedient of changing his residence.

This interpretation is echoed by the plain language of 601 KAR 12:020 Section 2 which provides as follows:

> No person whose driving privilege has been withdrawn, denied, suspended, cancelled, or revoked in any state or licensing jurisdiction shall be issued a Kentucky operator's license until proof of clearance or termination of the driving privilege withdrawal has been submitted to the Transportation Cabinet.

This rule, promulgated pursuant to KRS 186.400, requires that the Cabinet not issue a Kentucky operator's license during the period in which any state has revoked an applicant's driving privileges. Pursuant to its terms, the Cabinet denied licenses to Hobson for the five-year revocation period imposed by Florida (or until such time that Kentucky receives "proof of clearance or termination" of such revocation).

Hobson argues that KRS 189A.010 and 189A.070 require the Cabinet to issue him a Kentucky driver's license because one year has elapsed since his last DUI conviction. His reliance on these statutes is misplaced. These statutes apply only when determining the length of suspension for an individual possessing a Kentucky license who is sentenced under KRS 189A.

Hobson also argues that KRS 186.560(5) mandates that the "period of the revocation, denial, or withdrawal shall be one (1) year . . . ." This statute has to do with the revocation of a Kentucky license. Moreover, it applies only under the specifically-enumerated circumstances listed in the statute, none of which are present in this case.

Hobson also contends that KRS 186.-440 (implemented by 601 KAR 12:020 Section 2) violates his right to equal protection of the law because it treats driver's license applicants with suspended out-of-state licenses differently from driver's license applicants with suspended Kentucky licenses. We do not agree.

Kentucky has adopted the "strict scrutiny" and "rational basis" tests for challenges to laws based on violation of equal protection. *Hooks v. Smith*, Ky.App., 781 S.W.2d 522, 523 (1989). A "strict scrutiny" analysis may only be applied when a classification impermissibly interferes with the exercise of fundamental rights or operates to the peculiar disadvantage of a suspect class. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The ability to procure a driver's license has not been recognized as a fundamental right, but as a legitimately regulated privilege. *Division of Driver Licensing v. Bergmann*, Ky., 740 S.W.2d 948, 951 (1987). Neither are applicants with revoked out-of-state licenses a suspect class. Hence the "rational basis" test is the one to be used to determine whether KRS 186.440(4) and 601 KAR 12:020(2) are violative of equal protection under the law.

Here there is obviously a rational relationship between the foregoing statute and regulation and the two-fold legitimate purposes served by those laws. First there is a strong governmental interest in protecting the public from drivers whose licenses have been suspended for DUI offenses. Second, there is a strong governmental interest in preventing "license shopping" by nonresidents with suspended out-of-state licenses trying to obtain Kentucky licenses before their suspension period has ended. The statutory scheme employed by Kentucky has been adopted in more than 40 states in an effort to give effect to the sanctions imposed by each state as it sees fit.

The judgment of the Johnson Circuit Court is reversed.

All concur.