**TRANSPORTATION CABINET,**
**Commonwealth of Kentucky,**
**Appellant,**

v.

**Frederick Robert FEIGE, Appellee.**

No. 93–CA–001419–MR.

Court of Appeals of Kentucky.

Dec. 16, 1994.

William David Shearer, Jr., W. David Shearer, Jr., P.S.C., Louisville, for appellant.

Dan E. Siebert, McCoy & Associates, Louisville, for appellee.

Before EMBERTON, HUDDLESTON and McDONALD, JJ.

*OPINION REVERSING*

HUDDLESTON, Judge.

In 1989 Frederick Robert Feige held a valid Kentucky operator's license. In April of that year, Feige was charged for the third time with driving under influence of intoxicants (DUI). Feige moved to Florida before the charge was tried. Once there, he obtained a Florida operator's license. Feige was convicted in Kentucky of driving under the influence in June 1989, and Kentucky notified Florida that Feige had accumulated three DUI convictions in five years. Pursuant to Fla.Stat. § 322.28, Florida suspended Feige's license for ten years.[1]

Feige returned to Kentucky and complied with all but one of the requirements (including counseling) for the restoration of his Kentucky license. He did not produce, as required by a Kentucky administrative regulation, a clearance letter from Florida showing that the license issued him by that state is no longer suspended. Despite this, Jefferson Circuit Court rendered a summary judgment directing the Transportation Cabinet to "immediately issue to [Feige] a valid Kentucky Operator's license upon his meeting all of [the Transportation Cabinet's] normal conditions and requirements for reinstatement of that license, except the requirement of a Florida clearance as required by 601 KAR 12:020 Section 2." The Transportation Cabinet appeals asserting that until he produces a clearance letter from Florida, Feige cannot be issued a Kentucky license.

According to Ky.Rev.Stat. (KRS) 186.440(3)[2], those persons who are not to be granted a license include:

> Any person whose operator's license has been revoked, [and] any nonresident whose privilege of exemption under KRS 186.430 has been refused or discontinued, until the expiration of the period for which the license was revoked, or for which the privilege was refused or discontinued.

This statute, together with 601 KAR 12:020(2), was construed by this Court less than a year ago, in *Commonwealth of Kentucky Transp. Cabinet v. Hobson*, Ky.App., 870 S.W.2d 228 (1993). Hobson was convicted of DUI while a resident of Kentucky. He was convicted of DUI a second time after he moved to Florida and obtained a Florida license. Florida suspended his license for five years because of the two DUI convictions. He then returned to Kentucky and sought reinstatement of his Kentucky license. The Transportation Cabinet refused to issue a license, but the circuit court held that it must do so. In reversing the circuit court's judgment, this Court noted that 601 KAR 12:020(2) requires that:

> No person whose driving privilege has been withdrawn, denied, suspended, cancelled, or revoked in any state or licensing jurisdiction shall be issued a Kentucky op-

---

1. Florida law provides for reinstatement of driving privileges after two years if the DUI offender attends DUI school in Florida and reports to a Florida DUI supervision program for evaluation and counseling periodically during the term of the suspension.

2. KRS 186.440(3) was renumbered KRS 186.440(4) effective July 15, 1994.

erator's license until proof of clearance or termination of the driving privilege withdrawal has been submitted to the Transportation Cabinet.

According to the Court, "an individual who moves to Kentucky cannot successfully avoid the provisions of [KRS 186.440(3)] by the simple expedient of changing his residence." 870 S.W.2d at 230.

■ KRS 186.440(3) and 601 KAR 12:020(2), read together, make it clear that Feige's license may not be reinstated until he gets a clearance letter from Florida. Feige argues, however, that this requirement denies him the equal protection of the laws [3] because it treats applicants with suspended out-of-state operator's licenses differently than those applicants with suspended Kentucky licenses. This Court responded to the same argument in *Vaughn v. Commonwealth of Kentucky Transp. Cabinet*, Ky.App., 870 S.W.2d 231, 232 (1993):

Kentucky has adopted the "strict scrutiny" and "rational basis" tests for challenges to laws based on violation of equal protection. *Hooks v. Smith*, Ky.App., 781 S.W.2d 522, 523 (1989). A "strict scrutiny" analysis may only be applied when a classification impermissibly interferes with the exercise of fundamental rights or operates to the peculiar disadvantage of a suspect class. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, [2566], 49 L.Ed.2d 520 (1976). The ability to procure a driver's license has not been recognized as a fundamental right, but as a legitimately regulated privilege. *Division of Driver Licensing v. Bergmann*, Ky., 740 S.W.2d 948, 951 (1987). Neither are applicants with revoked out-of-state licenses a suspect class. Hence, the "rational basis" test is the one to be used to determine whether [KRS 186.440(3)] and 601 KAR 12:020(2) are violative of equal protection under the law.

Here there is obviously a rational relationship between the foregoing statute and regulation and the two-fold legitimate purposes served by those laws. First, there is a strong governmental interest in protecting the public from drivers whose licenses have been suspended for DUI offenses. Second, there is a strong governmental interest in preventing "license shopping" by nonresidents with suspended out-of-state licenses trying to obtain Kentucky licenses before their suspension period has ended. The statutory scheme employed by Kentucky has been adopted in more than 40 states in an effort to give effect to the sanctions imposed by each state as it sees fit.

■ Feige also argues that the Cabinet's refusal to issue him a license until he obtains a Florida clearance letter violates the double jeopardy clause of Section 13 of the Kentucky Constitution.[4] That contention has been made before and rejected: "[t]he suspension of an operator's license is no part of the penalty and the suspension proceeding is separate from the criminal processes culminating in a conviction." *Commonwealth, Dept. of Public Safety v. Palmisano*, Ky., 444 S.W.2d 128, 129 (1969). Florida did not punish Feige for the crime of DUI; it merely suspended his license, that is, it took away a privilege. Likewise, Kentucky is not punishing Feige for the crimes of DUI by refusing to reinstate his license. The refusal to issue an operator's license is an administrative act, not a criminal punishment. *See* KRS 186.570; *Speers v. Commonwealth*, Ky., 828 S.W.2d 638, 640 (1992); *Transportation Cabinet v. Bergmann, supra*, 740 S.W.2d at 950.

■ Feige further insists that the language of the regulation implementing KRS 186.440(3) is "unconstitutionally overbroad." He says that "the proper interpretation of [601 KAR 12:020(2)] is that no person whose out of state license has been suspended or revoked for a *violation in that state* shall be issued a Kentucky driver's license." To hold otherwise, he says, would create a circuitous and unsolvable dilemma that could not have been intended by the General Assembly when it enacted KRS 186.440(3). We think

3. Amendment 14, Section 1, to the Constitution of the United States and Section 3 of the Kentucky Constitution.

4. Section 13 provides, in relevant part, that "[n]o person shall, for the same offense, be twice put in jeopardy of his life or limb. . . ."

otherwise. Certainly, the General Assembly had a legitimate interest in preventing those whose licenses have been suspended in another state from obtaining an operator's license in Kentucky. Kentucky has no control over how other states determine when to suspend its citizens' operator's licenses and need not look to the reason for the suspension. Feige chose to go to Florida and obtain an operator's license. When he applied for a Florida license, he voluntarily subjected himself to that state's laws and regulations relating to the issuance of licenses. Florida validly suspended Feige's license according to its statutes and regulations, even though the offenses that led to the suspension occurred elsewhere. Neither Kentucky nor Florida is precluded from taking into account offenses that occurred in another state in deciding whether to suspend an operator's license. Rather than being overbroad, the regulation in question conforms to the statute and, read in conjunction with it, discourages "license shopping."

Feige asserts that Kentucky should not give "full faith and credit" to Florida's DUI law because Florida has refused to give full faith and credit to Kentucky law. This is so, according to Feige, because Florida refuses to give him a clearance letter despite his compliance with all Kentucky requirements for the issuance of a license, requirements that parallel Florida's. He cites *Gaskins v.*

*Gaskins,* 311 Ky. 59, 223 S.W.2d 374, 375 (1949), for the proposition that the full faith and credit clause of the United States Constitution "does not require one state to subordinate its laws and policies concerning peculiarly domestic affairs to the laws and policies of other states."

In our view, this is not a case implicating the full faith and credit clause. Feige cannot get a Kentucky license because he has not met its requirement that he obtain a clearance letter from Florida. The latter state is free to set its own requirements for obtaining a license or a clearance letter. Kentucky is free to ignore the Florida suspension, if it wishes, or to provide some procedure for those whose licenses have been suspended in another state to obtain a Kentucky license upon meeting certain prerequisites. Kentucky has chosen to honor other states' license suspensions. There is no constitutional impediment to its doing so.

The judgment is reversed.

All concur.